morning Curtis over for the plaintiff appellant Anastasia Maxwell this is a pretty straightforward case as reflected in our brief the facts seem clear the evidence seems clear enough and I think that we've outlined tediously outlined the evidence in the case showing horrendous sexually racially driven conduct against this appellant that's lasted ever since she started there with the water department in 2000 and continues until this date she remains an apprentice plumber she's still subject to continuing harassment and disrespect we feel that the district court as we argued just pretty much disregarded the evidence finding that in none of the causes of action that plaintiff had established a prima facie case and that Mr. is it Oler yes it is Oler one of the things but before she was terminated and then I know she did get reinstated that well the city gave reasons for every disciplinary action that they took on her so then in the court then it moved to that you had to give persuasive evidence about pretext but I would like you to what evidence can you point to that indicates that the city's termination of Miss Maxwell for taking copper or the arbitrators determination that she should be reinstated without back pay was discriminatory I'm not sure I understood the question I have what was discriminatory about that she it's not disputed she took copper they said she stole it the arbitrator eventually said okay yeah you took it you shouldn't have taken it maybe you didn't understand the policy but I'm not going to give you back pay what was discriminatory about when someone's stealing from the work well actually she didn't steal it what was going on and what continues to go on is that plumbers apprentice plumbers and laborers all continue to take scrap copper she was singled out and I think that there was testimony at the arbitration that she was singled out and she was the only one who was disciplined for removing copper which in fact had been given to her by her supervisor and plumber and the evidence makes that quite clear she was treated differently and I think that arbitrator made a point that she in taking the copper did nothing to suggest that she was trying to hide it or that she felt that she was doing something that she shouldn't have been doing well the arbitrator didn't give her back pay so the arbitrator didn't buy everything about that the arbitrator said okay you can go back to work but maybe you that that's true I thought the court asked whether it was to what extent was discriminatory and the fact is that it and I repeat that at no time she felt that she was doing anything different than anybody else and nobody else was penalized for taking the copper okay I guess what I would like you to address would be obviously there's a lot of smoke here now it appeared the district court and the the city gave explanations for every action that they took against her so then that puts it over to pretext so you have to show that you know if your client just kept doing things wrong and she was disciplined that's not the same as being discriminated against would you agree to that she was treated differently yes no no no no if in fact she did things wrong and she's disciplined for what she did wrong is that just is that enough to just show discrimination that in and of itself oh yes sure that's enough if she was treated discipline she was treated different than the other employees well what evidence do you have of that then because the other employees were not disciplined as they continue to take the copper okay so you're saying that on the copper what are the other things where she was treated differently I'm sorry I didn't hear well what other evidence is there that she was treated differently for being late for being rude to people for all of those things she she got into a number of scrapes over a period of time one good year I think and the other years weren't good from almost the very day she started her employment judge and it continues to this day she's been accused of insubordination she's been accused of going out of the chain of title she's been accused of not wearing proper gear she's been accused of everything about taking too much time for lunch about lying on a time card we've outlined it tediously in the record and because of my visual challenge I can't specifically point to that but we have outlined it specifically in the record to show what has happened to her continuously over the last ten years of her employment and in that regard she was singled out she was and we showed that her sex was a factor her race was a factor well she is a woman and she is an african-american but how do I know that that was the reason that all of those happened the city said the reason that she got in trouble is because she did certain things how do I know what what can I look at in the record that will tell me it happened to her because she's african-american or it happened to her because she's a woman because others engaged in the same conduct that she engaged in and no action whatever was taken against them I think we started one instance where there was some kind of physical altercation between a couple of male employees that should have resulted in both of them being terminated they weren't even charged with any violation see what evidence was there of of that what did the evidence consist of I'm the evidence of how other employees were treated what what did the evidence consist of was a testimony was a documentary evidence what what the evidence was a let's say about the stealing of the copper or the altercation about the fight as I've indicated because I'm visually challenged as I certainly could not even begin to recall or point out these and review the record we've made it clear it was very tedious and it was it's all compact and I'm not asking a specific question about yes any item of evidence I'm asking how did this how did she present this evidence was it personal records was it her testimony was a testimony or affidavits or how did it come in yes we have declarations to her question which you have to tell me yeah how do we have the declarations to support her contentions from the names of Brian Williams a lady by the name of Yancey later by the name of Hogan and the Clarence Williams and and they say that other people were stealing copper and were not disciplined yes I can't be too specific about that I don't recall but during the arbitration there was testimony that others were continuing to take copper and continue to this day to take copper and they're not disciplined for it and I think this is what the arbitrator relied on in making the determination that he made and we were not particularly happy with his determination that she violated the rules even though you had these rules there it was it was not the practice and nobody followed the rules not even the agency they continued to allow people to take the copper and she was just singled out for it and the arbitration was replete with evidence concerning that okay thank you you want to save you got six minutes left would yes yes sure okay we'll hear from the other side good morning your honors Lauren Munson on behalf of a Pelley City and County of San Francisco your honor is the fact that here the fact is that the plaintiff provided or the appellant provided no evidence to meet the prima facie burden or to establish pretext on any of her causes of action she's provided no evidence of any of the employment decisions or adverse employment actions were based on her race or gender well let's take evidence I mean Mr. Ola suggested this evidence in the record that for example other people were taking copper and they were not disciplined actually there is no evidence of that the only evidence would be from this Maxwell herself and she alleges that other people have taken copper but she provides no corroboration or other foundation for these opinions they are just that opinion she specified who I believe not and I don't do not believe in her declaration in opposition to the summary judgment motion she did not identify people if you as Mr. Oler referred to the arbitration transcript she does I believe cite names of people but there's no evidence that the Public Utilities Commission the PC knew that any of these people were taking copper there's no evidence that they were on notice that anyone else was taking copper what is in the evidence is that there was a very clear policy reiterating that copper is not free that it's there's a scrap policy and that you termination if you're caught stealing copper and there is evidence that she was there were eyewitnesses that saw her taking copper and putting it into her private vehicle and there's evidence that the city then chose to enforce its its policy given that she had you agree that if the employer has a policy that it enforces selectively based on race that that would be a evidence of discrimination yes if there was evidence of that but there is absolutely no evidence that the that the city enforces policy policy in a disparate way there's absolutely no evidence that it was aware that anyone else was violating the policy so I don't see how the city could disparately or could you know discipline someone if they're not aware that that there's theft going on in this case they were well what about why doesn't the city's handling of Paul I think boost cows derogatory remarks I think what did he call her quote-unquote bitch I think and in the context of Miss Maxwell's employment history race material is just a fact concerning a claim of hostile work environment it's an isolated incident I want one incident actually I think she testified in her deposition miss Maxwell did that he called her bitch on two separate isolated occasions months apart and there's that does not rise to the level of severe and pervasive and he did it three times in a year would that be enough no so what would be enough every day you have to be called a bitch it has to be every day oh no I mean that no it doesn't that can't be right well it has to be more than twice and I would say more what has to be pervasive yeah it has to be pervasive and it has to affect the terms or her her employment conditions and there's no evidence that it did in fact there there is evidence or the city did take corrective action against this Paul person and he didn't end up getting a one-day suspension because of it but that happened after you know the record closed so that's not on the record but there is evidence in the record that there were disciplinary and proceedings instituted against him well now she got disciplined a lot and so I what I I would call this where there's smoke there's fire I mean it's true every time that she was disciplined you give a reason but why and she is black and she is she is a woman so what would they have had to show on pretext assuming that because we got they the court moved it in the McDonnell Douglas she did give the reason so we're really at the district court found that she didn't even meet her prima facie burden she didn't show the causal connection but then also went and did the pretext analysis as well but what I would just like to note that a lot of the incidences for the retaliation the discrimination causes of action are completely outside the statute of limitations and appellant concedes the city's argument in the district court so for the FIHA and the 1981 claims you can't look at anything but before I'm no sorry for the settlement no before October 2005 for the discrimination under 1981 and the FIHA claims so that would put only the discipline for now wouldn't Morgan say that if it when you're looking at a hostile work environment you could look back you can yeah I mean it's not actionable but it can be all part of the pattern if there are incidents that occur after the date you can however I would point to there was a break in you know her her disciplinary actions in December it's gone for 18 months well no before that actually in December 2004 Kevin Barry who's the manager of CDD which is the division of PUC where she worked sat down with her and she had pending disciplinary new pending disciplinary actions against her and I think they were recommending dismissal at that time and Kevin Barry sat down with her I believe that Mr. Oler was involved in this conversation sat down with the appellant and actually set aside all of those that the disciplinary recommendations and they came up with a work agreement and he he he thought where they had to go to the team meeting and that didn't know no that was this was after that this is way after that this is in December 2004 sat down they came up with a work agreement set aside the disciplinary actions miss Maxwell agreed to follow the policies and procedures and the rules of the city and mr. Barry said I'll work with you let's meet on a monthly basis if you have a problem come to me let's work through your you know obviously you're not happy here let's see how we can fix this and and she had this was the quiet year from December 2004 up until her the theft of copper in August 2006 she had no disciplinary action so you know that break in time I think breaks that you know that any argument of continuing action here and she had a no a discipline free for over about 18 months a little bit more until she broke the policies and procedures of the PC and decided to take some copper and that brings us to her termination but so I mean the city would argue that the adverse employment action in question she is now working for the city or not she is she was reinstated was reinstated and then she brought the lawsuit yeah yes she filed the lawsuit during the dependency of her arbitration so while she was grieving her termination she also filed this lawsuit and her reinstatement doesn't render the case smooth together excuse me I'm sorry her I mean she was reinstated the case is moved I don't see that I mean she did not raise discrimination or harassment in her arbitration so that wasn't an issue considered by the arbitrator it was simply just cause for her termination so what your your position basically is yes there's been a lot of activity but yes she does stuff wrong you respond to it and it has nothing to do and she's presented no evidence that any of the disciplinary actions were even if we're going to go beyond the statute of limitations were related to her race or gender at all it just and she's actually said yes I'm in her declaration many of her statements are yes I wasn't wearing my safety equipment and yes I did come late to lunch or back from lunch she actually admits that some a lot of the actions are true but she just is saying that I you know I wasn't treated fairly but she provides no evidence of any other employee that engaged in the same activity as her and was treated differently there's no evidence other than her own opinions and her speculation that other people were treated differently but there's no corroborating evidence no for foundation for any of her opinions and case law shows that the appellants opinions alone that either that the employers reasons were wrong or in warranted are not enough there needs to be more and that more is not here and I would like to talk the court hasn't mentioned it but in the papers one of them is Maxwell's contention to retaliatory actions is for failure to be promoted and I just wanted to highlight that Ms. Maxwell was terminated at the time that the promotional there's an L with the city of eligibility lists are created in order to consider promotions and this is because the employees are civil service civil servants and there's a whole civil service rules that govern promotions and this promotional list which is found at not the list I'm sorry the announcement was found at supplemental excerpt of record 693 through 694 I just want to point out the timeline here and that this list was October 2006 Ms. Maxwell was terminated at that point this is a promotive only announcement but if you wrongfully terminated her how could she but I guess her position is had you not wrongfully terminated her she would have been there and then she could have gotten on the list that is her argument but the problem with that argument is well first of all there's there's no evidence that the promotional process was in any way related to Ms. Maxwell and her race and her gender or any of her complaints are completely you know two separate tracks but this and I mean I just wanted to emphasize this list was a promotive only in-house promotion you had to be an employee in order to even apply to be on this eligibility list as Maxwell was not an employee at that time she was not on the eligibility list the list was closed prior to her the arbitrary decision reinstating her so she was never she's never she was never on that eligibility list so she was never eligible for promotion so what she's asking for what the city would have had to do is just discard the eligibility list reopen the entire application process reopen it to everyone and restart the whole process over again for Ms. Maxwell to be considered and and that's the fact is that she was not eligible for this list because she was not an employee at that time and she also beyond that even if she were on the list has provided no evidence of how she is more qualified than anyone who's on the list or anyone that was promoted no evidence that she would have been eligible for promotion so the record is okay thank you okay you have no further questions thank you you've got a little time left for a bottle a couple of points first related to the promotion there were people promoted off of that list after Ms. Maxwell was reinstated and of course the city can do whatever it wants to with its eligibility lists now the fact is that Ms. Maxwell still has not been promoted and that she would have been promoted and could have been promoted notwithstanding that list if in fact she was eligible to be promoted to the position of plumber and there was evidence in the record indicating that she had seniority above several of the people who were promoted to the position of plumber and additionally I do think that the record speaks for itself and shows that the continuing conduct against her was pervasive and continuing and it definitely impacted upon her continuing status with the agency her not getting paid for the 18 months she was off from work and for her still not yet being promoted to the position of plumber thank you okay thank you okay so I will stand submitted we are adjourned
judges: Martinez, Kozinski, Callahan